Geraldine **BECKWITH**, Plaintiff,

v.

**WAL–MART STORES EAST, L.P.**, Defendant.

Case No. 2:14–cv–02139–cgc.

United States District Court,
W.D. Tennessee,
Western Division.

Signed Feb. 6, 2015.

David A. McLaughlin, Morgan & Morgan Memphis, LLC, Memphis, TN, for Plaintiff.

Anthony Blake Neill, Rainey Kizer Reviere & Bell, Memphis, TN, Russell E. Reviere, Rainey Kizer Reviere & Bell, PLC, Jackson, TN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CHARMIANE G. CLAXTON, United States Magistrate Judge.

Before the Court is Defendant Wal–Mart Stores East, L.P.'s Motion for Summary Judgment. (Docket Entry ("D.E.") # 25). Based upon the parties' voluntary consent, this case has been referred to the Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (D.E. # 15). For the reasons

set forth here, Defendant's Motion for Summary Judgment is GRANTED.

## I. Introduction

This is a slip-and-fall case that raises a claim of negligence on the basis of premises liability. On February 12, 2014, Plaintiff filed a Complaint for Damages in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. (D.E. # 1, Exh. B). Plaintiff alleges that, while shopping at a Wal–Mart Supercenter Store on Winchester Road in Memphis, Tennessee on February 18, 2013, she slipped on a clear piece of plastic, causing her to fall and become seriously injured. (*Id.* ¶¶ 7–10). Plaintiff has brought a claim of negligence against Defendant for the following: failing to properly maintain its aisles clear from debris and hazards; failing to warn Plaintiff of the dangerous condition; failing to train its employees to monitor the floor surfaces to ensure the safety of its customers; and, failing to inspect the area where Plaintiff was injured to ensure that it was free from debris, defects, or dangers. (*Id.* ¶¶ 15–21). On February 28, 2014, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1332. (D.E. # 1).

On December 3, 2014, Defendant filed the instant Motion for Summary Judgment along with its Statement of Undisputed Material Facts and its exhibits thereto. (D.E. # 25). Defendant argues that Plaintiff's negligence action must fail as a matter of law because the undisputed facts demonstrate that Defendant did not have actual or constructive notice of the allegedly dangerous condition prior to Plaintiff's Fall. (Memo. in Support of Def.'s Mot. for Summ. J. at 4–8). In the alternative, Defendant argues that the Court should grant its motion even if it was found to have notice because the undisputed facts show that reasonable minds could only conclude that the Plaintiff's failure to pay attention to where she was walking was equal or greater than the alleged fault of Defendant. (*Id.* at 8–10).

On December 23, 2015, Plaintiff filed her Response, which contained her response to Defendant's Statement of Undisputed Material Fact as well as her own Statement of Additional Material Facts in Dispute and her exhibits thereto. Plaintiff responded that a genuine issue of material fact exists on the issue of whether Defendant had actual or constructive notice of the hazardous condition. (Pl.'s Resp. at 7–10). As to Defendant's alternate argument, Plaintiff responded that a genuine issue of material fact exists on the issue of which party bears the greatest degree of fault. (*Id.* at 10–14).

On January 5, 2015, Defendant filed its Reply with its additional exhibits in support of its Motion. (D.E. # 27). Defendant argues that Plaintiff has presented no evidence regarding the origin of the allegedly dangerous condition or length of time it existed prior to her fall and that, therefore, she cannot prove that Defendant had actual or constructive notice of it. (Def.'s Reply at 4–9). Defendant also reasserts its argument that the Court should grant summary judgment even if it had notice because reasonable minds could not differ as to whether Plaintiff's failure to pay attention was equal or greater to the alleged fault of Defendant. (*Id.* at 9–10).

## II. Proposed Findings of Fact

Plaintiff is a regular shopper at the Wal–Mart Supercenter Store on Winchester Road ("Wal–Mart") in Memphis, Tennessee, "always" going to that location and doing "grocery shopping and everything" approximately "three to four times a month or more." (Def.'s Mot. for Summ. J., Exh. A ("Pl.'s Dep.") at 36:1–3). On the date of her fall, Plaintiff had gone to Wal–Mart to pick up prescriptions and a few other items. (*Id.* at 35:11–14). At one

point while shopping, Plaintiff left the pharmacy and went down an aisle looking for sewing supplies. (*Id.* at 37:16–18). She was "walking, looking up, trying to see whether or not there was a sign" to direct her and was not looking down at the floor. (*Id.* at 37:18–20, 41:2–11).

She did see a male employee and a female employee in the area where she was perusing, which stocked furniture such as "daybeds on one side and . . . chairs on the other side," but she "just really wasn't paying any attention." (*Id.* at 37:21–23, 42:17–19, 44:5–18, 50:5). It appeared to Plaintiff that the male employee was "over taking boxes or taking something," "doing his work," and "taking pieces and stuff out of a box or something" and that the female employee was "up doing, basically, the same from there," although Plaintiff was "not really certain." (*Id.* at 42:15–16, 44:5–18). As she continued to attempt to determine "where the aisle was that [she] needed to go," she realized that she was slipping "like [she] was on ice or something," and she fell to the floor. (*Id.* at 37–23–38:4).

After she fell, "two of the employees, male and female, pulled [her] up." (*Id.* at 38:16–18, 40:6–8). The male employee that assisted her after her fall had been "maybe a few feet away," which she estimated was more than five of six feet and maybe about ten feet, from the area where she fell prior to her falling. (*Id.* at 40:9–

23). She immediately wanted to know what she had slid on when a "young man in the store handed" her a "piece of plastic." (*Id.* at 38:4–5, 38:14–23). The piece of plastic was a "manufactured piece" with "writing on it" that measured "maybe about a six by six, kind of square" (*Id.* at 44:19–21, 48:19–24).[1] The piece of plastic had been on the floor "in between [Plaintiff] and the employees." (*Id.* at 44:1–4). She inquired as to whether this is what she had slipped on and the man "took the plastic and folded it up and threw it" partially under the shelf where "you could see it." (*Id.* at 38:21–24, 42:11, 48:15–16, 50:19–24, 51:13).

Plaintiff is "not sure" how long the piece of plastic was on the floor prior to her fall. (*Id.* at 44:22–24). Plaintiff is also "not certain" how the piece of plastic came to be on the floor. (*Id.* at 45:1–2). None of the employees that assisted Plaintiff after her fall mentioned that they had been aware of that piece of plastic laying on the floor. (*Id.* at 51:24–52:3). Plaintiff states that the male employee should have seen the piece of plastic because, if she had looked at the ground, she would have seen it. (*Id.* at 52:11–19). Thus, Plaintiff believes that, "even though the young man was doing his job stocking, . . . materials being left out like that could be hazardous [and] . . . shouldn't have been on the floor." (*Id.* at 52:4–13).

1. At Plaintiff's deposition, she was asked whether certain photographs accurately depicted the piece of plastic that caused her fall. (*Id.* at 47:15 & Exh. B). Plaintiff responded that she was not sure if the photographs accurately depicted the piece of plastic because, "once [the male employee] took it, the plastic up off the floor and folded it and put it back under the shelf, [she] really didn't get a chance to examine it. And when the supervisor came over, he took it from—he got it. [Plaintiff] told him that the young man had put it under the shelf. He took it and folded it and put it in his pocket." (*Id.* at 47:17–23,

82:19–83:9). Plaintiff, thus, stated that she could not be certain that the photograph showed "the actual piece it was" because the male employee "didn't give it to [her], per se," that he "had it in his hand, . . . folded it up, . . [and] put it on the shelf," and that she only saw it "when [the male employee] picked it up" and when the supervisor picked it up. (*Id.* at 47:24–48:18, 51:10–16). Plaintiff stated that the piece of plastic she fell on was clear and had writing on it, which was similar to the piece of plastic depicted in the photograph. (*Id.* at 49:1–11).

## III. Proposed Conclusions of Law

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir.1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir.2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed.1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"Liability in premises liability cases stems from superior knowledge of the condition of the premises." *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 46 (1995) (citing *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn.1980)). Merchants owe customers a duty "to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible ... if the circumstances of time and place are such that by the exercise of reasonable care the proprietor should have become aware of such conditions." *Hardesty v. Service Merchandise Co., Inc.*, 953 S.W.2d 678, 681 (1997) (citations omitted); *see also Kathy Gordon v. By-Lo Markets, Inc.*, No. E2009-02436-COA-R3-CV, 2010 WL 3895541, at *2 (Tenn.Ct.App.2011) ("[T]he premises owner has a duty to exercise reasonable care under all circumstances to prevent injury to persons lawfully on the premises."); *Mary Helen White v. BI-LO, LLC*, No. M2007-02698-COA-R3-CV, 2008 WL

4415781, at *3–*4 (Tenn.Ct.App. Sept. 26, 2008) (discussing the duty of a premises owner). "The key to premises liability is forseeability." *Gordon*, 2010 WL 3895541, at *2. However, a "merchant is not an insurer of the safety of its customers, and it is not to be presumed that the proprietor of a store . . . is instantly aware of all that transpires within its establishment." *Id.* (citations omitted); *see also Paradiso v. Kroger*, 499 S.W.2d 78, 79 (1973).

▪ The five general elements of a cause of action for negligence, which also apply to such an action based upon premises liability, are as follows: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *West v. East Tennessee Pioneer Oil, Co.*, 172 S.W.3d 545, 550 (Tenn. 2005) (citing *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn.1998)). In addition to the elements of negligence, a plaintiff must also establish the following in a premises liability case: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was caused by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident. *Kathy Gordon v. By-Lo Markets, Inc.*, No. E2009–02436–COA–R3–CV, 2010 WL 3895541, at *2 (citing *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn.2008)); *see also Donald Craig v. United States*, 2008 WL 4206729, 2008 WL 4206729, at *3 (W.D.Tenn. Sept. 11, 2008); *Hardesty*, 953 S.W.2d at 682; *Ogle*, 919 S.W.2d at 46; *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (1987); *Atkins v. City Finance Co.*, 683 S.W.2d 331, 332 (1984); *Paradiso*, 499 S.W.2d at 79.

"Actual notice can be established if the plaintiff can show that . . . defendant's agents or employees actually observed the condition but failed to correct it." *Montie Arrington v. United States*, No. 04–1059 AN, 2005 WL 3533441 (W.D.Tenn. Dec. 22, 2005). "Constructive notice is defined as information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cause upon him the duty of inquiring into it." *Gordon*, 2010 WL 3895541, at *2 (internal citations omitted).

"As a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed." *Hardesty*, 953 S.W.2d at 682. "If liability is to be predicated on constructive knowledge by the Defendant, the proof must show the dangerous or defective condition existed for such a length of time that the Defendant knew, or in the exercise of ordinary care should have known, of its existence." *Id.*; *see Paradiso*, 499 S.W.2d at 79; *White*, 2008 WL 4415781 at *5; *Jones v. Zayre*, 600 S.W.2d 730, 732 (1980); *Ogle*, 919 S.W.2d at 47. Even if Plaintiff meets this threshold, "[t]he length of time the condition existed is not the only factor to be considered in determining whether or not the proprietor had constructive notice of the danger. One must take into consideration the nature of the business, its size, the number of patrons, the nature of the danger, [and] its location along with the foreseeable consequences." *Paradiso*, 499 S.W.2d at 79 (citations omitted).

Upon review, the first question is whether there is a genuine issue of material fact exists as to whether Defendant created or caused the piece of plastic that resulted in Plaintiff's fall to be on the floor. The only evidence in the record that could arguably create a genuine issue of material fact on this issue is Plaintiff's testimony that a

male employee was "over taking boxes or taking something," "doing his work," and "taking pieces and stuff out of a box or something" and that a female employee was "up doing, basically, the same from there," although Plaintiff was "not really certain." Plaintiff also testified when asked what she should Defendant "did wrong in this situation" as follows:

> Well, I felt, as I stated before, that even though the young man was doing his job stocking, but materials left out like that could be hazardous. So I just felt like it should have been—it shouldn't have been on the floor.

While the evidence is undisputed in the record that Plaintiff saw two employees who appeared to be performing stocking duties in the immediate area where she fell, there is no evidence in the record that anything packaged in the boxes contained packaging material of the nature of the piece of plastic that caused Plaintiff's fall. In sum, there is no proof as to how the piece of plastic came to be on the floor. ▉ "When there is a complete absence of proof as to when and how the dangerous condition came about, it is improper to permit the jury to speculate on these vital elements." *Ogle*, 919 S.W.2d at 47. "A case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence. There must be some evidence of a material and substantial nature." *Id.* Courts that have considered similar situations lacking proof of how the dangerous condition arose have not permitted the question to be presented to the trier of fact. *See Hardesty*, 953 S.W.2d at 682; *Paradiso*, 499 S.W.2d at 80; *Gordon*, 2010 WL 3895541 at *3–*4; *Craig*, 2008 WL 4206729, at *3–*4; *White*, 2008 WL 4415781, at *1.

Nonetheless, Plaintiff urges this Court to follow the rationale in *Benson v. H.G. Hill Stores*, 699 S.W.2d 560 (1985) to reach the conclusion that the two employees who appeared to be performing stocking duties in the immediate area where she fell could have caused the plastic to be on the floor. Plaintiff argues the presence of these employees who appeared to be unloading boxes is sufficient to survive summary judgment on the question of whether Defendant created or caused the dangerous condition because a rational jury could infer that the plastic came to be on the floor as a result of their stocking work.

In *Benson*, the plaintiff was shopping late at night near the store's closing time and saw no other customers in the store. *Id.* at 561. She was walking by the front check-out lanes near the front door when she slipped and fell on wet floor wax. *Id.* The area of the plaintiff's fall was in plain view of two store employees who had just received payment for her purchases. *Id.* While the amount of wax was not set forth in detail, it was apparently quite substantial. *Id.* at 564 (finding it noteworthy that it was a "spillage of such a quantity of wax as described by plaintiff" and sufficient enough to stain her white pants).

The *Benson* court focused heavily on the circumstantial nature of the case. The court noted that "[f]acts may be inferred from circumstantial evidence, and an inferred fact may be the basis of a further inference to the ultimate or sought-for fact." *Id.* at 563 (citations omitted). Further, the *Benson* court stated that "it is sufficient for a party having the burden of proof to make out the more probable hypothesis, and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. It is only necessary for the plaintiff to present proof which, if believed by the jury, makes plaintiff's theory of the case more probable than the theory of the defendant." *Id.* (citations omitted). The court noted that a jury would be permitted to "draw upon and consider its general

personal knowledge and experience which is common to the populace in general" and that the Court may take judicial notice and a jury would be permitted to consider "[f]acts relating to human life, health and habits, and management and conduct of businesses which are of common knowledge" in its "determination of the inferences to be drawn from proven circumstantial facts." *Id.*

Ultimately, when considering the question of whether there was a genuine issue of material fact as to whether the defendant caused or created the dangerous condition, the *Benson* court reasoned that, because "wet wax is applied to floors by trade establishments themselves as a maintenance procedure," a "jury would therefore be entitled to reason that wet wax on a grocery store floor was there because it was placed or spilled there by an employee." *Id.* at 563–64.

■ However, in Plaintiff's case, even considering all rational inferences that may be made from the circumstantial evidence presented, it cannot be inferred that a clear piece of plastic would have been intentionally placed on the floor of Defendant's establishment by its employees for any usual business purpose, as was a reasonable inference in *Benson.* Instead, the only reasonable inference is that the clear piece of plastic was accidentally placed on the floor either by an employee or by a patron. Yet this inference requires the Court to return to the starting point of its analysis—that there is no proof as to who caused or created the dangerous condition. While the clear piece of plastic could have been packaging material dropped by the stockers, which there is no proof to support, it could have arrived at its location in countless other ways, which there is also no proof to support. As the *Benson* court acknowledges, "[t]he jury is not permitted to speculate as to which of two equally

probable inferences is applicable." 699 S.W.2d at 563.

Thus, as to the question of whether there is sufficient proof to go to the jury on whether Defendant caused or created the dangerous condition, the issue presented in the instant case is much more analogous to that considered by the *Jones* court than the *Benson* court. In *Jones,* the plaintiff was shopping in a large department store. 600 S.W.2d at 731. She selected items to purchase and was walking toward the check-out counter when she suddenly fell. *Id.* She discovered that she had "stepped on a small plastic clothes clip, which had caused her to fall." *Id.* The clip was "clear," "about the size of an ordinary conventional paper clip," and was the type "used by the manufacturers of clothing to hold the clothing on place on clothes hangers." *Id.* The record reflected that "[m]any items of clothing come into [the defendant's] store with these clips attached and remain on the clothing until it is sold," that "[i]t appears that in the course of business in the store some of these clips will become detached from the clothes and fall on the floor," and that the "store is swept down twice each day and it is normal to find some of these clips when the floor is swept down." *Id.* However, even though the clips were undisputedly an item used by the business in the usual course of its operations, the *Jones* court concluded that there was no proof as to how the plastic clip came to be on the floor. *Id.* at 732. As even the *Benson* court noted in distinguishing *Jones,* "there is no common knowledge that stores put plastic clothes clips on their floors for maintenance." 699 S.W.2d at 565. Therefore, the *Jones* court was faced with the same question as this court—whether there was a triable issue of fact when the plastic clips could have been accidentally dropped by employees performing their duties or could have been accidentally

dropped by customers shopping at the store. With no proof as to which of these scenarios actually occurred, the Court found that no triable issue of fact existed and upheld the trial court's directed verdict in favor of the defendant.

In the instant case, even considering all reasonable inferences, there is ultimately no proof as to how the clear piece of plastic that caused Plaintiff's fall came to be laying on the floor. There is also no proof that would allow the Court to infer whether it was more likely the result of an employee's or a patron's actions. As the *Benson* court notes, the plaintiff bears the burden of establishing that her theory of the case more probable than the theory of the defendant. 699 S.W.2d at 563. Absent such proof, "it is improper to permit the jury to speculate on these vital elements." *Ogle*, 919 S.W.2d at 47. Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Defendant caused or created the allegedly dangerous condition.

■ The next question is whether Defendant had actual notice that the piece of plastic was laying on the floor. Plaintiff has presented no evidence that any of Defendant's employees or agents actually observed the piece of plastic laying on the floor. Further, none of the employees that assisted Plaintiff after her fall mentioned that they had been aware of that piece of plastic laying on the floor. Ultimately, there is no proof that Defendant's employees knew of the piece of plastic on the floor. Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Defendant had actual notice of the allegedly dangerous condition.

■ The final question is whether Defendant had constructive notice of the piece of plastic laying on the floor. Tennessee law is clear that a plaintiff must submit evidence as to the length of time the dangerous condition had existed to es-

tablish constructive knowledge. The undisputed evidence in the record, however, is that Plaintiff does not know how long the piece of plastic had been on the floor. As already stated, "[w]hen there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements." *Ogle*, 919 S.W.2d at 47. Accordingly, there is no genuine issue of material fact as to whether Defendant had constructive notice of the allegedly dangerous condition. Thus, as there is no genuine issue of material fact as to whether Defendant either cause or created the allegedly dangerous condition or had actual or constructive notice of it, Defendant's Motion for Summary Judgment is hereby GRANTED.

## IV. Conclusion

For the reasons set forth herein, Defendant's Motion for Summary Judgment is GRANTED.